AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**
NOV 22 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Alcatel 6062W phone
IMEI No. 015126000455416
Seized as FP&F No. 2020250600007601

Case No. 19MJ5193

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952, 960, 963 | Importation of controlled substances, Prohibited Acts A, and Attempt and Conspiracy |

The application is based on these facts:

See attached Affidavit of HSI Special Agent Sapan Patel

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI Special Agent Sapan Patel
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/21/19

*Judge's signature*

City and state: San Diego, CA

Honorable Judge Bernard G. Skomal
*Printed name and title*

# AFFIDAVIT

I, Special Agent Sapan Patel, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

>Motorola XT1924-7 phone
>IMEI No. 354138092806678
>Seized as FP&F No. 2020250600007601
>("Target Device 1")

>Alcatel 6062W phone
>IMEI No. 015126000455416
>Seized as FP&F No. 2020250600007601
>("Target Device 2")

(collectively "Target Devices) as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960 and 963, as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Arthur Harvey ("Defendant 1") and Gabriel Miller ("Defendant 2") for importing approximately 32.68 kilograms (72.04 pounds) of methamphetamine from Mexico into the United States. *See U.S. v. Harvey et al* Case No. 19-mj-4604 (S.D. Cal.) at ECF No. 1 (Complaint). The Target Devices are currently in the evidence vault located at 880 Front Street Suite 3200, San Diego, CA 92101.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

1

## BACKGROUND

4. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since December 2017. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

5. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.

6. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates

engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

9. On October 20, 2019, at approximately 2:49 p.m., Defendant 1 and Defendant 2 applied for permission to enter the United States at the Otay Mesa Port of Entry vehicle primary lane 4. Defendant 1 was the driver and registered owner of a 2002 Chevrolet Trail Blazer ("the vehicle"). Defendant 2 was in the front passenger seat of the vehicle. Defendant 1 and Defendant 2 were referred for secondary inspection, and Customs and

Border Protection Officers (CBPO) discovered 62 packages concealed within the rear quarter panel and spare tire of the vehicle. The packages weighed approximately 32.68 kg (72.04 lbs.), and field-tested positive as methamphetamine. Defendant 1 and Defendant 2 were subsequently arrested. Target Device 1 was seized from the vehicle and Target Device 2 was seized from Defendant 2. Target Device 1 and Target Device 2 were seized by CBPO V. Le.

10. Later, agents read Defendant 1 his *Miranda* rights, and he agreed to speak to agents without an attorney present. Defendant 1 denied knowledge of the drugs in his vehicle. Defendant 1 further stated that he had the only keys for the vehicle, only he drove the vehicle, and only he and Defendant 2 were in the vehicle while in Mexico. Agents also read Defendant 2 her *Miranda* rights, and she agreed to speak to agents without an attorney present. Defendant 2 denied knowledge of the drugs in the vehicle and stated that she and Defendant 1 did not travel together to Mexico; instead, she and Defendant 1 coordinated to meet in Mexico. According to CBPO V. Le, Target Device 2 was seized from Defendant 2's purse.[1]

11. In light of the above facts, Defendants' statements, and my own experience and training, there is probable cause to believe that Defendant 1 and Defendant 2 were using Target Device 1 and Target Device 2, respectively, to communicate with each other and others to further the importation of illicit narcotics into the United States. Additionally, on October 24, 2019, Defendant waived Indictment and was charged by Information with one count of violating Title 21, United States Code, Sections 952 and 960, in the Southern District of California in case number 19-cr-4581-GPC.

12. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an

---

[1] On the date of Defendants' arrest, and during a subsequent de-brief of Arthur Harvey (Defendant 1), Harvey unlocked Target Device 1 and provided agents with a Mexican telephone number, which Harvey stated belonged to the individual from whom he purchased the vehicle. In an abundance of caution, the Government asks the Court not to consider information agents may or may not have seen during that examination in determining whether there is probable cause for the requested warrant. The facts supporting probable cause in this affidavit do not include information found in the examination of the cellphones.

event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant 1 and Defendant 2, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search Target Device 1 and Target Device 2 for data beginning on July 21, 2019, and ending on October 21, 2019, which was the day following Defendants' arrest.

## METHODOLOGY

13. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the

results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

16. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

### CONCLUSION

17. Based on the facts and information set forth above, there is probable cause to believe that a search of Target Device 1 and Target Device 2 will yield evidence of Defendants' violations of Title 21, United States Code, Sections 952, 960 and 963.

18. Because Target Device 1 and Target Device 2 were seized at the time of Defendants' arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on Target Device 1 and Target Device 2. As stated above, I believe that the appropriate date range for this search is from July 21, 2019 to October 21, 2019.

19. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachments A-1 and A-2 and seize the items listed in Attachment B using the above-described methodology.

1 | I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Sapan Patel
Homeland Security Investigations

Subscribed and sworn to before me this ___21___ day of November, 2019.

_____
Hon. Bernard G. Skomal
United States Magistrate Judge

## ATTACHMENT A-1

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> Motorola XT1924-7 phone
> IMEI No. 354138092806678
> Seized as FP&F No. 2020250600007601
> ("Target Device 1")

The Target Device is currently in the possession of Homeland Security Investigations, 880 Front Street Suite 3200, San Diego, CA 92101.

8

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

Alcatel 6062W phone
IMEI No. 015126000455416
Seized as FP&F No. 2020250600007601
("Target Device 2")

The Target Device is currently in the possession of Homeland Security Investigations, 880 Front Street Suite 3200, San Diego, CA 92101.

9

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period between July 21, 2019, to October 21, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services— such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, Target Device 1 and Target Device 2; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963